**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **BRANDY HAMILTON and** | § | |
| **ALEXANDRIA RANDLE** | § | |
|     **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 3:13-cv-240** |
| | § | |
| **NATHANIEL TURNER, AMANDA** | § | |
| **BUI, STEVEN MCCRAW, AARON** | § | _____ |
| **KINDRED AND CHARLES** | § | |
| **WAGNER** | § | **JURY REQUESTED** |
|     **Defendants.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Plaintiffs, Brandy Hamilton and Alexandria Randle and file this, their Original

Complaint and in support respectfully show the Court the following:

## I.  PARTIES

1.  Plaintiff Brandy Hamilton is an individual residing in Houston, Harris County, Texas.

2.  Plaintiff Alexandria Randle is an individual residing in Houston, Harris, County, Texas.

3.  Defendant Nathaniel Turner is a State Trooper with the Texas Department of Public Safety. He

    may be served with process at 5805 North Lamar Blvd., Austin, Texas 78773-0001. Defendant

    Nathaniel Turner is sued in his individual capacity.

4.  Defendant Amanda Bui is a State Trooper with the Texas Department of Public Safety. She may

be served with process at 5805 North Lamar Blvd., Austin, Texas 78773-0001. Defendant

Amanda Bui is sued in her individual capacity.

5.   Defendant Steven McCraw is the Director of Public Safety and is being sued in his individual

capacity. Mr. McCraw can be served with process by serving 5805 North Lamar Blvd., Austin,

Texas 78773-0001.

6.   Defendant Aaron Kindred is a Deputy Sheriff with the Brazoria County Sheriff's Office. He may

be served with process at 3602 CR 45, Angleton, Texas 77515. Defendant Aaron Kindred is

being sued in his individual capacity.

7.   Defendant Charles Wagner is the Sheriff of the Brazoria County Sheriff's Office. He may be

served with process at 3602 CR 45, Angleton, Texas 77515. He is being sued in his individual

capacity.

## II.  JURISDICTION

8.   The Court has jurisdiction of this lawsuit under 28 U.S.C. §1331, as it arises under the

Constitution, laws, or treatises of the United States of America.

## III.  VENUE

9.   Venue is proper in this Court under 28 U.S.C. §1391(b), as this is the judicial district in which a

substantial portion of the events or omissions giving rise to the claims occurred.

## IV.  FACTS

10. Paragraphs 1-9 are set forth above, and are herein incorporated by reference.

11. On or about the evening of Monday, May 28, 2012 [Memorial Day] Plaintiffs Brandy Hamilton and Alexandria Randle were traveling northbound on Highway 288 in Plaintiff Brandy Hamilton's vehicle. The two ladies [both plaintiffs] were traveling back from "Surfside Beach" with friends and family. Alexandria Randle and Brandy Hamilton are family friends.

12. While traveling northbound, Defendant DPS Trooper Nathaniel Turner (herein referred to as "Turner") activated his overhead lights on the DPS- issued cruiser, in what he later says on the video, is an attempt to initiate a traffic stop for speeding. It should be noted that the video shows Defendant Turner reaching excessive speeds without overhead lights or any other emergency equipment activated well before Plaintiff's vehicle comes into view on the video. The entire incident is recorded on his dash-camera which is a video camera which is mounted on the dah of his vehicle.

13. Defendant Turner can be seen visibly speeding right by all of the cars on the road.  All of the cars (7 of them) stay out of his way and are passed. He approaches Plaintiff Brandy Hamilton and she is in the left  lane that Defendant Turner is speeding in. Defendant Turner goes to pass

Plaintiff Brandy Hamilton on the right side.  Plaintiff Brandy Hamilton,  simultaneously, initiates her signal in an effort to get out of the left hand to let Defendant Turner pass. No lights or sirens have been initiated at this time as the beep on the video camera alerts the viewer as to when the emergency equipment is activated. Not only is there a beep but the audio begins to play when Defendant Turner activates the emergency equipment.

14. The stop is initiated while Defendant Turner is up on Plaintiff Brandy Hamilton's bumper and she [Plaintiff Hamilton] quickly pulls over. When Defendant Turner got out of the vehicle he went to the passenger side of the vehicle and addressed the passenger [Plaintiff  Alexandria Randle] asking her if they [she and Brandy Hamilton] had "any I.D." Plaintiffs complied.

15.  It must be noted that Defendant Turner never leaned his head into the Plaintiff's vehicle and never entered the vehicle at this time. After receiving the I.D.s Defendant Turner walked around to the driver's side and asked Plaintiff Brandy Hamilton to get out of the vehicle and "come and talk to me a minute." Brandy asked Defendant Turner "can I please put on my dress because I have on a swim-suit" and Defendant Turner's response was "don't worry about that, come on out here." Brandy Hamilton, in a two-piece bathing suit, complied with Defendant Turner's request. Brandy Hamilton was made to stand outside on the highway in a bathing suit while passersby watched.

16.  Defendant Turner followed Brandy Hamilton to the other side of the car.  He stood very close to her. While directly in Plaintiff Hamilton's face, Defendant Turner said, "when is the last time you had weed in that car-don't play around with me." Plaintiff Hamilton answered inaudibly. Then Defendant Turner said "when I search the vehicle, am I going to find anything" and Plaintiff Hamilton said "no." Then Defendant Turner said "if a female officer comes to search you will she find anything" and Brandy Hamilton stated "no." Then Defendant Turner went on to ask "is there anything in your bra or in your underwear" and Plaintiff Brandy Hamilton said "no." Then Defendant Turner said "anything in your purse" and Plaintiff Brandy Hamilton said "no." Defendant Turner said "anything in your car" and Plaintiff Hamilton said "some cigars." Defendant Turner than said "cigars…with marijuana in them or just cigars" and Plaintiff Hamilton said "no just cigars." Then Defendant Turner goes on to say "you haven't freaked them [the cigars] or anything have you" and Plaintiff Hamilton said "no." Defendant Turner said "alright, give me one minute."

17. Defendant Turner also had passenger, Plaintiff Alexandria Randle, to exit the vehicle and stand near the car- on the same side of the vehicle as Plaintiff Brandy Hamilton. Defendant Turner then proceeded to ask Plaintiff Alexandria Randle the same or similar questions. Plaintiff Alexandria Randle, said "no Sir" to all of the same or similar questions asked. Defendant Turner

then told Plaintiff Alexandria Randle to put out her cigarette until his female police officer comes and Plaintiff Alexandria Randle complied.

18. Then Defendant Turner took Brandy Hamilton's phone [that was apparently ringing] out of her hand and threw it in Plaintiffs' vehicle and told her that she was "being detained." Plaintiff Hamilton complied and Defendant Turner placed on handcuffs. Then, he immediately turned to Plaintiff Alexandria Randle and asked her to put her hands behind her back and she too complied.

19. Defendant Turner stated over his radio that he had "two females detained." Defendant Turner goes on to tell Plaintiff Hamilton to "go ahead and get against the car." It must be noted that this date has a recorded temperature in Brazoria County of anywhere from 86 to 89 degrees. The record-high in that county (from May 28, 1958 in Angleton, Texas) is 90 degrees, so this was one of the hottest "May 28" in history.

20. Plaintiff Hamilton was unable to stand against the hot car and visibly moved away from it a few times to gain composure from the burning metal. You can see Plaintiff Hamilton trying to lean on the car (as instructed by Defendant Turner) in different angles with different parts of her body, in an effort to comply, but was eventually was unable to.

21. Meanwhile, Defendant Turner calls dispatch and says "see if a lady is in the area that can come

and check these two while I search the vehicle because there is an odor of marijuana." It must be noted that Defendant Turner had not even began to search the vehicle before he made this call to dispatch requesting a female officer to search Plaintiffs. In addition to this he still had not leaned his head inside Plaintiff's vehicle, nor had he gotten into Plaintiff's vehicle at all at this point.

22. Defendant Turner calls over dispatch for a Deputy to "stand by and watch the ladies as [he] searched the vehicle." He [Defendant Turner] requested assistance because Defendant Turner "wants to make sure these gals' don't throw nothing out while I'm searching." Defendant Turner then said "you can smell the weed in the car, I am about to search it."

23. Defendant Turner goes on to tell dispatch the Plaintiff Alexandria Randle's zipper is undone, on her 'daisy duke' shorts or whatever they are called." It must be noted that Defendant Turner never asks Plaintiff Alexandria Randle why her zipper is undone, in fact, he does ever mention this to Plaintiff Randle. Defendant Turner does not notate that in any way, either by telling dispatch as soon as he saw Randle's zipper was undone, or by asking Randle any questions when he saw her "undone zipper." Defendant Turner never discusses this, he simply tells this to dispatch.

24. Defendant Turner continues to speak with dispatch to ensure that the girls have no warrants as he repeats their driver's license multiple times to dispatch. Defendant Turner then yells at

Plaintiff Brandy Hamilton to "go where I told you to stand" and "don't move again." Plaintiff

Hamilton is forced to comply and tries to lay her bare body back on the extremely hot car. She

stays on the car a bit and then again, is forced to get off of the hot car. You can see that Plaintiff

Hamilton tries to comply but has to move away from the hot car. Defendant Turner then yells at

the two Plaintiffs again and tells them" you face this way" and "you face the other way" in an

irritated voice.  Both Plaintiffs comply.

25.  Plaintiff Brandy Hamilton leans back on the hot car as instructed by Defendant Turner when

Defendant Turner says, "you know what [ and then says to dispatch]  driver is not complying

with verbal commands." Now, when Defendant Turner says this Plaintiff Brandy Hamilton is

facing him and leaning her body against the car as instructed- in fact, she is still and stiff as a

board which can be seen on the video.

26.  Defendant Turner then makes Plaintiff Hamilton get into the front seat of his patrol car in the

summer heat. Plaintiff Hamilton can be heard asking him "why" and then she states " I can't do

this, it's too hot." Defendant Turner tells Plaintiff Hamilton  that "I am going to put your seatbelt

on so that  if my car is hit you won't go through the windshield" which informs the viewer that

he is aware of the danger that he is putting Plaintiff Brandy Hamilton in by putting her in that

vehicle on the feeder road.

27. In addition to this, because Plaintiff Brandy Hamilton was detained, Defendant Turner had to put the seatbelt on for her. In doing so he had to lean over her because she was sitting down in the front seat in handcuffs. Please keep in mind the closeness involved for Defendant Turner to buckle Plaintiff Hamilton in. One should also notate that the two Plaintiffs were made to originally get behind their vehicle in the grass, as a set-up for protection from the feeder of the road where they could be stuck by traffic.

28. Defendant Turner then gets into his cruiser next to Plaintiff Brandy Hamilton [driver's seat] and initiates his dash camera on the inside of his vehicle so that Plaintiff Brandy Hamilton can be recorded while she sits inside of the police cruiser. It ia alarming as to why Defendant Defendant Turner felt the need to buckle Plaintiff Hamilton up while leanuing over her when he was getting ready to get into the driver's seat to turn on the camera anyways. Defendant Turner did roll down some of the windows partially, but did not turn on the cruiser for air conditioner which would have suited the health and welfare of Plaintiff Hamilton on that hot day as she sat handcuffed in his police cruiser that one would use common sense to assume got hotter by the minute as the sun steadily beamed on it and it sat in one place.

29. Plaintiff Hamilton is visibly hot and uncomfortable on the video. Defendant Turner exits the vehicle and turns his attention towards Plaintiff Alexandria Randle. He yells at Plaintiff

Alexandria Randle and states, " I am going to put my flashlight on the ground and that is where you stand and don't move." Please notate that the sun is shining extremely brightly in the video and Turner is asking Plaintiff Alexandria, who wears eye glasses, to see a light on the ground from a flashlight in the daylight. Plaintiff Alexandria Randle apologizes to Defendant Turner and says, "I'm not trying not to listen, it's just …(inaudible)."

30. It is at this time that Defendant Turner begins the search of the vehicle by opening the back-right passenger door [where he tossed Plaintiff Brandy Hamilton's cellphone]. At this time Defendant Turner can be seen leaning into Plaintiff Brandy Hamilton's vehicle and the viewer can hear the rummaging as he goes into the coolers and contents of the goods that Plaintiffs  took to the beach on that day [purses, bags, and coolers filled with food and drinks].

31. While Defendant Turner is actively searching the vehicle and is leaning inside of the vehicle, a phone rings and Defendant Turner tells the person, presumably his wife, that "I am going to have to call you back real quick" and "baby I am on a vehicle search, I will be home in a little bit."

32. As Defendant Turner is searching the vehicle he can be seen throwing food and drinks out of the coolers and onto the grass. Apparently, the rest of the "family and friends" ride up to the scene after noticing that their family and friends are no longer behind them and have been pulled over

by Defendant Turner. Defendant Turner yells at the woman [whose voice is audible] to "get back into the car." "The woman" from carload of friends and family says "hey, that is my stuff" as Defendant Turner is throwing the contents of the cooler in the dirt.

33. Defendant Turner decides to pull the entire cooler out of the car to search it. He finds nothing. By this time, Plaintiff Brandy Hamilton's phone is ringing and Defendant Turner answers it saying " uh no…this isn't Mrs. Hamilton, this is Trooper Defendant Turner, you can call back in a couple of hours…I don't know if that's who I got in custody right now, I got one, you'll have to call back whosever phone this is."

34. It is at this point that the second responding officer requested by Defendant Turner, shows up. This second responding officer is a male, Deputy Aaron Kindred of the Brazoria County Sheriff's Office (herein referred to as Kindred) . Defendant Kindred begins looking around and accessing the scene. Defendant Kindred says "what you need help with" and Defendant Turner responds "nothing…I am waiting on Bui to respond to search these two females... I got these folks tried to roll up on me- go ahead and get them identified." Defendant Kindred acquiesces. The demeanor of the two police officers on the scene must be noted. It seems as if these two know each other and the Brazoria County Sheriff's Deputy seems to know who "Defendant Bui" is when Defendant Turner refers to her. All of the peace officers seem to know each other by

their demeanor in the video as well as their verbiage.

35. Defendant Kindred goes off of the camera in an effort to accost the family and friends who have

pulled over. Meanwhile, Defendant Turner is pulling bags out of the car and asking Plaintiff

Alexandria Randle who the bags in the back belong to. Plaintiff Randle says "no this is my purse

right there." Defendant Turner goes on to say "are you the one who put that 'sweet' under the

front seat" and Randle says "no…no Sir." Defendant Turner, in a condescending voice says "oh

alright…oh you don't know nuttin' about that huh." Randle says that "we are with our friends

for Memorial Day and I am riding with her- you see that girl back there in the black shorts that's

my…(inaudible)…" Defendant Turner says, "ok" and continues searching the vehicle.

36. Defendant Turner continues to go through the contents of personal bags in the right passenger

side-back seat of the car and so on. Defendant Turner says "we got air freshener, perfume…"

and he continues going through the right back passenger seat of the vehicle. Defendant Turner

continues to search, now moving to the driver's side of what looks on the video to be like the

back seat. More searching is done back there. Defendant Turner then goes to the other side of the

back seat (the front-seat driver's side). Defendant Turner found nothing and proceeded to the

back seat (driver's side to search).

37. Defendant Kindred came back to the car to report to Defendant Turner that "they were all clear"

---

[the family and friends behind them]. Then Defendant Turner popped open the trunk and told Defendant Kindred " (something inaudible)…I didn't find anything else yet…" At this point Defendant Kindred and Defendant Turner discuss that there was probably more but "she had time to throw it down."

38.  Defendant Kindred then begins assisting Defendant Turner in the search of the trunk of the vehicle. Another cooler is pulled out of the trunk and Defendant Kindred jokingly tells Defendant Turner that his headlight is out. Defendant Turner says that his " wig-wag isn't working- I don't know why but it works when it wants to work" on his cruiser. Defendant Kindred says "hhmmm –that is kind of weird" as he looks at Defendant Turner's non-working lights on his vehicle.

39. Now, because Defendant Turner does not find anything, he [Defendant Turner] asks Defendant Kindred if he [Defendant Kindred] saw anything on the ground in the grass because "she could've thrown it down because she had time." Defendant Turner puts the cooler back into the trunk. The search of the vehicle is now over and Defendant Kindred and Defendant Turner meet Defendant Bui who has arrived just arrived on the scene. Defendant Bui's arrival is on video.

40. Defendant Bui is briefed as soon as she gets on the scene. Defendant Turner says that they "were all headed to Houston and when they [family and friends] noticed that the other car [containing

Plaintiff Brandy Hamilton and Plaintiff Alexandria Randle] was not behind them, they hooked a 'U-turn' and came back around to see what happened to them. They are all clear."

41. Defendant Bui says, "do you have any gloves…I don't have any gloves" and one of the male officers [either Defendant Turner or Defendant Kindred] tell her "no, I don't have any gloves but you can use these." Defendant Kindred then states to Defendant Bui, "do you want us to make this easier and we get in the back?" and Defendant Bui says "yes." Defendant Turner then says "Officer Bui is going to search you and your friend…she ain't goin' to find nuttin' is she" and Plaintiff Hamilton says "no." Then Defendant Turner jokingly tells Plaintiff Hamilton "she is about to get up-close and personal with some womanly parts." Defendant Turner goes on to tell Plaintiff Hamilton, "She [Bui] is going to search you, I ain't, because I ain't about to get up-close and personal with your woman areas…she is going to put some gloves on."

42.  Defendant Bui then comes to the passenger side of Defendant Turner's cruiser, where Plaintiff Brandy Hamilton is, and performs the cavity search. Defendant Bui never asks Plaintiff Hamilton for her consent. Defendant Bui leans Plaintiff brandy Hamilton over forcibly, as Plaintiff Hamilton is handcuffed in the back and sitting in the passenger seat of the vehicle. Plaintiff Brandy Hamilton can be seen wincing as the cavity searched is performed.

43. Plaintiff Hamilton's cavity search is done. It must be noted that Defendant Turner and Defendant

Kindred have a clear view into Defendant Turner's vehicle during the Plaintiff's cavity searches, as they can be seen on camera. Plaintiff Brandy Hamilton is audible and tells Defendant Bui "do you know how violated I feel?" There is no audible response from Defendant Bui to Plaintiff Brandy Hamilton's question. Once Plaintiff Brandy Hamilton's cavity search reveals nothing, Defendant Turner directs Defendant Bui's attention to Plaintiff Alexandria Randle and tells Defendant Bui that "her zipper is open" and "she had time and could have shoved it in her crotch."

44. Defendant Bui then goes to escort Plaintiff Alexandria Randle to get a cavity search. Defendant Bui gets Plaintiff Randle from the front of Plaintiff Brandy Hamilton's vehicle where she has now remained outside, in the same place, in the scorching heat for what the video says is at least thirty minutes. As Defendant Bui escorts Plaintiff Alexandria Randle, on the camera, the viewer can see that Defendant Bui is wearing the same gloves that she just had on to complete Plaintiff Brandy Hamilton's cavity search. Defendant Bui even touches Plaintiff Alexandria Randle's arm with the same gloves she performed Plaintiff Brandy Hamilton's cavity search with. Defendant Bui does not change gloves before she performs Plaintiff Randle's cavity search.

45. Because her cavity search is complete, Defendant Turner escorts Plaintiff Brandy Hamilton to the front of his cruiser. He makes the comment that "let me do this in front of the video" because

he has to stand behind her to get the cuffs off. Plaintiff Hamilton says " I am going to tell them

that you did something to me that you weren't supposed to do." Defendant Turner said "it is on

video…take your hat off because that is the only pace I haven't checked yet." He checks under

Plaintiff Hamilton's  hat and walks away.

46.  Defendant Turner now tells Hamilton to stand behind her car so she "won't get hit." Defendant

Turner then tells Brandy that there will be a ticket issued for drug paraphernalia and that if she

doesn't admit that it is hers that both parties will get the ticket and that they can "argue with the

D.A."

47. Defendant Turner cannot quite get this sentence out when you can hear Plaintiff Alexandria

Randle is yelling from the pain of her cavity search. You can hear Plaintiff Alexandria Randle

yelling in agony and asking Defendant Bui what she is doing. You can hear Plaintiff Brandy

Hamilton yelling for Plaintiff Alexandria Randle  not to fight and calm down (so they can be let

go). You can audibly hear Plaintiff Alexandria Randle crying and asking Defendant Bui not to

do this to her. Plaintiff Brandy Hamilton yells at Plaintiff Alexandria Randle again asking her to

calm down because Plaintiff Alexandria Randle is crying and sobbing.

48. Plaintiff Brandy Hamilton tells the Officers that they are being extreme and the fact that they

think someone put something up their stuff is going to the extreme. Defendant Turner then,

while Plaintiff Brandy Hamilton is not free to leave, and while Plaintiff Alexandria Randle is in handcuffs, tells both Plaintiffs that if someone doesn't fess up to the weed they will both be issued tickets so Hamilton says that it is her car so she will take whatever ticket he is issuing so that they [Plaintiffs] can leave.

49. Defendant Turner goes on to say, "don't smoke weed in your car and you won't have to go through this." One must bring attention to the fact that neither Plaintiff received a "pat-down," a "frisk," nor any other search to their person other than the cavity search.

50. Both Brandy Hamilton and Alexandria Randle were deprived of vital Constitutional Rights guaranteed to them under the law. Brandy Hamilton and Alexandria Randle have the right to be free from warrantless searches and seizures, just like any other red-blooded human in this country. These women were violated in ways that no person should endure in broad-open public, on the side of the road, on a busy holiday, with tons of passersby, and in view by two males, Defendant Turner and Defendant Kindred. The Plaintiffs were terrified, humiliated, and made to sit in the sun for an unreasonable length of time. Plaintiffs were disrespected, 'toyed' around with by law enforcement, and forced to succumb to vague and confusing orders. One of the Plaintiffs was made to get into a hot police cruiser for an unreasonable amount of time with no air-conditioner on one of the hottest recorded days in that county's history.. The actions of these

officers were not based on consent nor were they based on any reasonable suspicion or probable

cause. This search and seizure was highly unreasonable.

51. Moreover, the Defendant's actions were in violation of clearly established law regarding strip

searches and cavity searches, which has for years, required that officers must have reasonable

suspicion or individualized probable cause to conduct any lawful search. Officers had no

probable cause to believe that either Plaintiff possessed drugs. There were no extenuating

circumstances warranting any reasonable officer to believe that there was reasonable suspicion

or an individualized probable cause to conduct a search of the Plaintiffs' persons or let alone, a

painful, humiliating, cavity search.

### CAUSE OF ACTION UNDER 42 USC §1983

52. As a result of Defendants' malicious invasion and unconstitutional search and seizure,

Defendants deprived Plaintiffs of their right to equal protection under the law. This impeded the

due course of justice and violated the Fourth Amendment of the Constitution as well as 42

U.S.C. § 1983 and §1988.

53. These Defendants, police officers, who are supposed to uphold the law, through their actions and

their omissions to act, deprived Plaintiffs of security and liberty under the Fourteenth

Amendment of the U.S. Constitution. These searches and seizures were unreasonable and

unnecessary. These searches and seizures were invasive, violating and humiliating. The search

and seizure were un-called for, and not provided for by any law.

54. Moreover, at all relevant times, Defendants, as state troopers, sheriff's officers, or peace officers

employed by the Department of Public Safety ("DPS") and Brazoria County Sheriff's Office,

were acting under the direction, control, and supervision of the DPS Director Steve McCraw and

the Brazoria County Sheriff, Charles Wagner, both of whom are responsible for making the

policy of their respective departments, their employees, and their troopers, sheriffs or staff-

members. The Defendants were acting pursuant to official policy, practice, custom, and

operation of the DPS and Brazoria County's Sheriff's Office, respectively.  In the alternative,

these searches were part of or persistent or widespread practices, which although not officially

authorized, are so common and well settled as to constitute a custom that fairly represents DPS

as well as Brazoria County Sheriff's Department policy.

55. Acting under color of law, by and through their policy makers, Steve Defendant McCraw and

Charles Defendant Wagner, and pursuant to official policy or custom and practice, Defendant

McCraw and Defendant Wagner, intentionally, knowingly, recklessly, or with deliberate

indifference to the rights of the citizens of Texas and to Plaintiffs, failed to instruct, supervise,

control, and discipline, on a continuing basis, Defendants in the performance of their duties to

refrain from:

    a.   Conspiring to violate the rights, privileges, and immunities guaranteed to each Plaintiff by the Constitution and Laws of the United States and the Laws of the State of Texas, and

    b.   Otherwise depriving citizens and individuals of their constitutional and statutory rights, privileges, and immunities.

56. Defendant McCraw and Defendant Wagner had knowledge of, or in the alternative had they diligently exercised their duties to instruct, supervise, control, and discipline on a continuing basis, they should have had knowledge of the wrongs that were perpetrated against Plaintiffs as alleged in this petition. DPS and Brazoria County Sheriff's Office, by and through their respective leaders, Director Steve McCraw and Sheriff Charles Wagner, had the power to prevent or aid in preventing the commission of said wrongs, could have done so, and intentionally and knowingly or with deliberate indifference to the rights of their persons such as Plaintiffs, failed or refused to do so.

57. The DPS and Brazoria County Sheriff's Office, directly or indirectly, under color of law, by and through its final policymaker, Director McCraw and Sheriff Wagner, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendants described herein.

58. Both Defendant McCraw and Sheriff Wagner had actual notice of previous problems and

complaints concerning  long standing pattern of police misconduct involving unlawful strip

searches, cavity searches, and other acts such as this, yet failed to take corrective action.

59. The individual Defendants were not adequately trained as to the requirements of probable cause,

obtaining proper informed consent to search, and performing or not performing strip or cavity

searches. On belief, Defendants have performed, initiated, and or assisted in numerous

unconsented and illegal cavity searches of females. It was second-nature to all of the Defendants

who participated, and it is an ongoing and pervasive problem.

60. The final policymaker with respect to training of officers is DPS Director Steve McCraw and

Brazoria County Sheriff Charles Wagner. Director McCraw and Sheriff Wagner knew from

experience that troopers would often encounter situations where cavity searches might, in the

opinion of a trooper or deputy, be necessary. Director McCraw and Sheriff Wagner knew from

experience that troopers and deputies which would encounter persons on the side of Texas

roadways in circumstances which would require troopers to consider pat-down frisks, full body

searches, strip searches and cavity searches. Yet knowing that troopers would encounter such

situations, Director McCraw and Sheriff Wagner failed to institute any program of training to

instruct troopers in (1) identifying situations in which such searches were lawful and (2)

procedures for conducting such searches in a lawful manner. Situations involving terrifying

searches such as the ones in this case are so widespread that Director McCraw and Sheriff

Wagner's failure to train their peace officers on the requirements of proper searches amounts to

a deliberate indifference on the part of the State to the constitutional rights of persons situated

like the Plaintiffs. (1) The officers exceeded constitutional limitations by searching the Plaintiffs

in some manner conducted herein; (2) the searches arose under circumstances that constitute a

usual recurring situation with which peace officers must deal; (3) the inadequate training

demonstrates a deliberate indifference on the part of DPS toward persons with whom the police

officers come into contact; and (4) there is a direct causal link between the constitutional

deprivation and the inadequate training. Director McCraw and Sheriff Wagner's failure to train

their peace officers on proper police procedure involving searches of persons including strip

searches and/or cavity searches was a proximate cause of the illegal search and seizure herein.

61. Director McCraw and Sheriff Wagner knew from experience that peace officers [troopers and

deputies] would often encounter situations where cavity searches might, in the peace officer's

minds, be necessary. Director McCraw and Sheriff Wagner knew from experience that peace

officers would encounter persons on the side of Texas roadways in circumstances which would

require the peace officers to consider pat-down frisks, full body searches, strip searches and

cavity searches. Yet knowing that peace officers would encounter such situations, Director

McCraw and Sheriff Wagner failed to implement any written directives or other guidance to

peace officers in (1) identifying situations in which such searches were lawful and (2)

procedures for conducting such searches were lawful manner.

62. As a direct result of Defendant's illegal conduct, Plaintiffs have suffered physical, mental, and

emotional injuries and were deprived of their Constitutional rights for which they sue herein.

## VII. DAMAGES

63. As a direct and proximate result of the acts and omissions outlined above, Plaintiffs have been

severely damages. Defendants' conduct caused physical pain, as well as emotional distress and

mental anguish and trauma.

64. Plaintiffs seek compensatory damages in an amount deemed sufficient by the trier of fact to

compensate them for their damages, which includes physical pain, mental anguish, pain and

suffering.

65. Plaintiffs also seek exemplary damages against Defendants.

66. Plaintiffs have retained the services of THE BOOKER LAW FIRM and claim entitlement to an

award of reasonable and necessary attorney's fees under 42 U.S.C. §1983 and 1988.

## VIII. JURY DEMAND

67. Plaintiffs respectfully request trial by jury.

## IX. PRAYER

For these reasons, Plaintiffs seek judgment against Defendants for:

a.   Compensatory and actual damages in an amount deemed sufficient by the trier of fact;

b.   Exemplary damages;

c.   Attorney's fees under 42 U.S.C. §1983 and §1988;

d.   Costs of court; and

e.   Interest allowed by law for prejudgment and/or post-judgment interest.

Respectfully submitted,
By*:   /s/ Allie R. Booker*
Allie R. Booker
State Bar No. 24071071

THE BOOKER LAW FIRM
4801 Woodway, Suite 300E
Houston, Texas 77056
Tel. (713) 292-2225
Fax. (713) 583-3995

ATTORNEY FOR PLAINTIFFS