Case 3:13-cv-00240 Document 118 Filed in TXSD on 04/28/16 Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
April 28, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| BRANDY HAMILTON, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 3:13-CV-240 |
| § | |
| NATHANIEL TURNER, *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

This case arises from the alleged roadside body cavity searches of two women by a female Texas Department of Safety trooper during a traffic stop. Plaintiffs Brandy Hamilton ("Hamilton") and Alexandria Randle ("Randle"), have brought this action under 42 U.S.C. § 1983 against Brazoria County Sheriff's Office Deputy Sheriff Aaron Kindred ("Kindred") asserting bystander liability claims and alleging that the body cavity searches violated their civil rights guaranteed by the Fourth Amendment to the United States Constitution.[1] Hamilton and Randle allege, among other things, that Kindred failed to prevent or stop the unlawful searches.

Pending before the Court is Kindred's First Amended Motion for Summary Judgment (Dkt. 62) and Supplement to the First Amended Motion for Summary

---

[1] In some pleadings the parties refer to the facts in the complaint as setting forth "bystander" liability claims and then in other pleadings the parties refer to these same facts as setting forth "direct" liability claims. *See generally* Dkts. 62, 63, 76, 77, 98, 99, and 100. Nevertheless, the crux of the claims is that Hamilton and Randle were subjected to unlawful body cavity searches and it is undisputed that Kindred did not conduct these searches. Accordingly, the Court finds that the claims in this action against Kindred are claims for bystander liability. *See* Dkt. 98.

1

Judgment (Dkt. 98). In these pleadings, Kindred argues that the Court should grant summary judgment for two reasons. First, Kindred argues that he is "entitled to qualified immunity because at the time of the searches, bystander liability only applied to excessive force violations" and Hamilton and Randle have "abandoned" any bystander liability claim involving excessive force. *See* Dkt. 62 at 3 and Dkt. 100 at 5. Second, Kindred argues that Hamilton and Randle cannot establish the requisite elements of a bystander liability claim against him. Having reviewed the full record and applicable authorities, for the reasons stated below, the Court **DENIES** Kindred's motion.

## FACTUAL BACKGROUND[2]

On Memorial Day weekend of 2012, Hamilton and Randle, the sole passenger in Hamilton's car, were traveling northbound on Highway 288, from Surfside Beach. While they were in Brazoria County, Hamilton was pulled over by Texas Department of Public Safety ("DPS") State Trooper Nathaniel Turner ("Turner") for speeding. *See* Dkt. 19, Am. Complaint, ¶¶ 12-13; *see also* Dkt. 62, Ex. 2C (0:00-0:52). Smelling marijuana, Turner instructed Hamilton and Randle to exit the vehicle. Dkt. 62, Ex. 2C (2:06-2:13). Hamilton was wearing a bikini and Turner describes what Randle was wearing as "pants or Daisy Duke shorts, whatever they are." Dkt. 62, Ex. 2C (5:21-8:25). Turner handcuffed and separated them; leaving Randle next to Hamilton's car and placing Hamilton in the front passenger seat of his patrol car. Dkt. 62, Ex. 2C (3:10-3:30). Turner then requested dispatch to send a female DPS state trooper to the scene to search

---

[2] For purposes of Kindred's motion, the following material facts are either uncontroverted or established by the summary judgment evidence viewed in the light most favorable to Hamilton and Randle.

Hamilton and Randle for contraband. Dkt. 62, Ex. 2C (4:25-5:00). Turner also requested assistance with traffic control and security from local law enforcement. Dkt. 62, Ex. 2C (5:21-8:25). In response to this second request, Kindred arrived at the scene. *See* Dkt. 62, Ex. 2C (13:10-14:21). Turner informed Kindred that he was waiting on a female trooper to search Hamilton and Randle. *Id.* Turner instructed Kindred to identify the drivers of the additional cars that had pulled up on the scene. *See* Dkt. 62, Ex. 2C (14:21-14:41).

Shortly thereafter, DPS State Trooper Amanda Bui ("Bui") arrived at the scene, pulling her car to the right side and a few feet away from Turner's patrol car, just out of view of the dash mounted video camera in Turner's car. *See* Dkt. 62, Ex. 2C (14:41-26:11). Bui asked Turner and Kindred if they had any gloves, and Turner took off the gloves that he had just used to search Hamilton's car and offered them to Bui. *See* Dkt. 62 at 11 and Ex. 2C (26:11-26:32). Kindred then asked Turner, "Do you want me to make this easier and go in the back," and Turner agreed, "Get in the back." *See* Dkt. 62, Ex. 2C (26:40-26:46). Kindred then stood behind Turner's patrol car, where Hamilton sat, handcuffed in a bikini. *Id.* Turner then questioned Hamilton through the open window of the car, stating "[Bui] is going to search you, I ain't going to do that…cause I ain't getting up close and personal with your women areas." *See* Dkt. 62, Ex. 2C (27:27-28:32).

Turner then joined Kindred at the rear passenger side area of Turner's patrol car, a few feet behind Hamilton. *See* Dkt. 62, Ex. 2C (27:27-28:32); Ex. 2A (10:1-13). Dash cam video from Turner's car shows they began chatting as Bui opened the front passenger door where Hamilton was seated. *Id.* Bui told Hamilton "You don't have

3

anything at all? ...I am just about ready to go in there, alright?" *See* Dkt. 62, Ex. 2C (29:00-29:31). Hamilton responded to Bui, "Go in where?" *Id.* Bui stated, "I am going to go in your cooch", and Hamilton responded, "are you serious?!" *Id.* Hamilton asked Bui, "you're going to go up my private parts," and Bui responded, "yes ma'am, that's why they called out a female." *Id.* Hamilton responded, "so you are going to stick your fingers in my stuff?" *Id.* As this exchange took place in the front seat, the video catches Turner commenting to Kindred, "I don't know if she stuck something in her crotch or this one did." *See* Dkt. 62, Ex. 2C (29:31-30:11). Bui performed a body cavity search of Hamilton, while Hamilton remained seated but leaning forward in the car. *See* Dkt. 62, Ex. 2C (30:15-30:35). Immediately after the body cavity search of Hamilton was completed, Turner asked Bui "nothing on her?" *Id.* Then Turner asked Bui to search Randle because "she is the one who had the zipper open." *Id.* Hamilton stated out the window, "do you know how violated I feel?" *See* Dkt. 62, Ex. 2C (30:35-30:37). At this point Kindred is seen turning towards the direction of Hamilton and changing positions on the side of Turner's patrol car. *See id.* The traffic was not heavy, but intermittent. *See* Dkt. 62, Ex. 2C (30:15-30:37). As Turner removed Hamilton from his patrol car she is heard to say, "Oh my God, that is so embarrassing". *See* Dkt. 62, Ex. 2C (30:45-30:57).

Bui then approached Randle, who had remained standing next to Hamilton's car. *See* Dkt. 62, Ex. 2C (30:45-30:57). Bui escorted Randle to Bui's own patrol car and conducted a body cavity search of Randle. *Id.* At this point, Kindred was positioned behind Turner's patrol car, and Bui is performing the body cavity search on Randle in her patrol car, which is right beside Turner's patrol car. *See* Dkt. 62, Ex. 2C (31:00-32:58).

4

Randle began to scream and yell, "That is so fucked up! ... I am so done!" *See* Dkt. 62, Ex. 2C (32:58-34:00). Hamilton yelled to Randle, "Alex, calm down!" *Id.* Turner asked, "nothing on her?" and Hamilton yelled again, "Alex, be quiet!" Randle again yelled, "Man, this is so fucked up." *Id.* Kindred is standing facing the direction of where Randle is searched, and not the direction of the traffic. *Id.* After the searches were complete, Hamilton complained to Turner stating, "…somebody puts their fingers up your stuff, that is going to the extreme…" *See* Dkt. 62, Ex. 2C (33:40-44).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. While the party moving for summary judgment must demonstrate the absence of a genuine dispute of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

"A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316,

5

326 (5th Cir. 2009). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). Nonetheless, the Court assigns "greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Buchanan v. Gulfport Police Dept.*, 530 F. App'x 307, 311 (5th Cir. June 4, 2013) (quoting *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)).

## ANALYSIS

### A. Does Qualified Immunity Bar the Claims Against Kindred?

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, ⎯⎯ U.S. ⎯⎯, ⎯⎯, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011)). "To be clearly established, a right must be

sufficiently clear 'that every "reasonable" official would [have understood] that what he is doing violates that right.'" *Id.* (quoting *al-Kidd*, 131 S.Ct. at 2078, and *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). If a reasonable police officer in the specific circumstances faced by the defendant would not have known that his conduct was unlawful under clearly established law, qualified immunity protects him from liability. *See Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

Kindred asserts that, at the time of the traffic stop, he could not have known that his alleged failure to act to prevent or stop the body cavity searches of Hamilton and Randle was unlawful. Kindred argues that at the time of the searches, the law in the Fifth Circuit had not clearly established that a bystander liability claim could be brought against a police officer based on any theory other than the failure to stop or prevent the use of excessive force. *See* Dkt. 62 at 6.[3] Kindred argues that, because Hamilton and Randle have "abandoned" any bystander liability claim against him under an excessive force theory, qualified immunity bars this action against him. *See* Dkt. 100 at 5.

In support of this argument Kindred refers the Court to numerous pleadings where he asserts that Hamilton and Randle have "argued that excessive force does not apply," "repeatedly admitted that they did not plead it, stated that they cannot be made to plead it, and asked the Court not to consider it." Dkt. 100 at 5, n.1. Kindred also asserts that in these pleadings Hamilton and Randle acknowledged that "excessive force was not

---

[3] The Court assumes that this is a correct statement of the law solely for purposes of analyzing Kindred's qualified immunity argument.

pleaded," "asked the Court not to let excessive force apply," and "did not want to plead it." *Id.* During a lengthy oral hearing, the Court reviewed in detail each of the pleadings that Kindred references in support of these assertions.[4]

The Courts finds that Hamilton and Randle have not abandoned their excessive force theory of liability in this case and that Kindred's assertions dramatically overstate what is reflected in the pleadings. At best, the pleadings reflect an ongoing and rather confusing debate between the parties as to whether excessive force is an essential element of a bystander liability claim or a separate cause of action, whether bystander liability can be based on theories other than excessive force, and whether Hamilton and Randle have a claim for "direct" liability in this case. Dkt. 100 at 5, n.1. Further, during the two hearings that the Court held on Kindred's motion for summary judgment, counsel for Hamilton and Randle unequivocally stated that they have not abandoned their bystander liability clam under an excessive force theory. Finally, the cases cited by Kindred in support of his "abandonment" argument are factually distinguishable from the facts of this case. *See e.g. Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1164 (5th Cir. 1983) (finding that alternative theories of recovery abandoned where plaintiff waited until after an adverse ruling on defendant's motion for summary judgment had been rendered by trial court and case was on appeal to raise them.). Accordingly, assuming arguendo that at the time of the traffic stop a bystander liability claim could only be based on an excessive force theory, the Court finds that qualified immunity does not bar this action against Kindred.

---

[4] Two of the record references are to pleadings filed by Kindred and not by Hamilton or Randle.

**B. Can Hamilton and Randle Establish the Requisite Elements of a Bystander Liability Claim Against Kindred?**

"Bystander liability" attaches when "the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.'" *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (quoting *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002)); *see also Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). "The rationale underlying the bystander liability theory is that a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer." *Id.* at 647 (quoting *Randall*, 302 F.3d at 204 n.24).

Kindred asserts that Hamilton and Randle cannot establish a bystander liability claim against him because the summary judgment evidence establishes beyond dispute that 1) he did not know that Bui was violating or about to violate Hamilton and Randle's civil rights by conducting a roadside body cavity search, and 2) he did not have a reasonable opportunity to stop or prevent Randle's search. In his affidavit, which is part of the summary judgment record, Kindred testifies that, "due to his location and the constant freeway noise from the holiday traffic [he] was unable to hear any conversations" between Hamilton and Randle and the DPS troopers, and that searches were conducted in the patrol cars "out of [his] view." *See* Dkt. 62, Ex. 1. Citing the video from the dash camera in Turner's car, Kindred argues that—even if he had heard Randle's screams—he could not have prevented Bui's body cavity search because the "interaction was over in seconds" and "at this point the search was already over or

9

happened so quickly [he] had no time to react to stop it." In fact, Kindred testifies that he thought Bui was only going to conduct a legal "pat down" search of the women and that "there were no indications otherwise." Dkt. 62 at 20. The Court finds that there is a serious dispute as to the material facts.[5]

Specifically, among the factual disputes here are whether: 1) Kindred knew that Bui was going to conduct body cavity searches of the two women, 2) Kindred knew that the searches were taking place once they began, and 3) at the very least he could have prevented Bui's body cavity search of Randle. The Court notes that the dash camera video from Turner's patrol car, and Hamilton and Randle's deposition testimonies are part of the summary judgment record, as is Kindred's own testimony. When viewed in the light most favorable to Hamilton and Randle, the totality of the summary judgment evidence reflects that Kindred stood just a few feet away from Hamilton while she sat in Turner's patrol car, with either the passenger door or window open, and that he was close enough to possibly hear the comments made by Turner and Bui to Hamilton, Hamilton's comments to Turner after the search, as well as Randle's screams and objections during her search in Bui's car. While Kindred claims he did not have a view of Hamilton's body below the waist during the time Bui conducted the body cavity search, the dash camera

---

[5] The one fact that does appear to be undisputed is that Bui violated Hamilton and Randle's Fourth Amendment rights by subjecting them to roadside body cavity searches. Even if Bui or Turner reasonably suspected that the women were concealing contraband in a body cavity, the summary judgment evidence does not reflect any exigent circumstances requiring their searches to be conducted on a public roadside rather than at a medical facility. *See Martin v. City of San Antonio*, 2006 WL 2062283, at *5 (W.D. Tex. July 25, 2006); *see also Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1272 (7th Cir. 1983) (noting that strip searches and body cavity searches are "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, [and] signifying degradation and submission" (citation omitted)).

video reflects that Kindred turned back and forth several times during her body cavity search, appearing to look directly in Hamilton's direction through the back window of the patrol car. Similarly, the evidence shows that Kindred stood just a few feet away from Randle as she was being searched in Bui's patrol car, and that he appears to be looking in her direction. The evidence also raises fact questions about what and when Kindred could hear. For example, while Kindred testifies that the "the constant roar of holiday Memorial Day traffic" meant he was unable to hear the exchanges between Hamilton, Turner, and Bui, the dash camera video reflects that the traffic noise at the scene was intermittent. *Compare Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)(plaintiff's version of the incident was "so utterly discredited" by the videotape "that no reasonable jury could have believed him.").

    Next, the evidence raises a material fact dispute regarding whether Kindred truly believed that only a lawful "pat down" was about to be performed on the women, and that "there were no indications otherwise." During his deposition, Kindred describes a typical "pat down search," in detail, stating that a pat-down can be done by a male officer and that a female officer is not always needed. *See* 71-5, Deposition of Aaron Kindred, pp. 55-57. Also, Kindred described in detail a "pat-down" search which he believed was taking place. *See id.* at pp. 55-65. Kindred defines a "pat down" search as "patting down outer clothing for contraband or anything that would make the scene unsafe." *See id.* at pp. 55, lines 6-11. During his deposition, Kindred even demonstrates a "pat-down" search of a person while they are standing up. *See id.* at pp. 58-62.

In contrast to those descriptions and demonstrations, when the searches of Hamilton and Randle took place, the evidence shows that, Kindred saw that Hamilton and Randle were going to be searched seated in a car rather than standing up, and said nothing to either Turner or Bui.[6] Although Kindred also swears that "[n]either plaintiffs nor DPS ever said anything about the search," he is seen on the video tape standing just feet away from Hamilton as she complains to Turner about the body cavity search, and Bui begins to search Randle. The Court finds that based on the summary judgment evidence, in any future trial of this case, "questions about the credibility of key witnesses [will] loom large." *Deville v. Marcantel,* 567 F.3d 156, 165 (5th Cir. 2009*).* The undisputed exchanges that occurred between the officers prior to the searches coupled with the fact that the searches occurred while the women were in the seated position in the patrol cars creates a factual dispute as to what type of search Kindred believed Bui was going to conduct on the two women. Accepting as true Hamilton and Randle's version of the facts, which is supported by the summary judgment record, the Court concludes that disputed facts in the record call into question both the objective reasonableness of Kindred's actions, and whether at the time of the searches Kindred reasonably believed that a "pat down" search occurred. Accordingly, Kindred's motions for summary judgment are **DENIED**.

---

[6] To the extent that Kindred is still objecting to the inclusion in the summary judgment record of his own deposition testimony taken under oath and attended by his current counsel of record, the Court hereby overrules this objection. *See* Dkt. 77 at 9.

## CONCLUSION

For the reasons discussed above, Defendants' Motions for Summary Judgment (Dkts. 62, 98) are **DENIED**.

**IT IS SO ORDERED**.

SIGNED AT GALVESTON, TEXAS, on April 28, 2016.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE